## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LEQIA W.,

                        Claimant,

           v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Respondent.

No. 20 CV 5687

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Leqia W.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 19, 23] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Motion for Summary Judgment [ECF No. 19] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 23] is granted.

## PROCEDURAL HISTORY

On December 22, 2016, Claimant protectively filed a Title II application for DIB alleging disability beginning on July 6, 2016. (R. 158–59). Her claim was denied initially and upon reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 112–14). On August 29, 2018, Claimant appeared and testified at a hearing before ALJ Bill Laskaris. (R. 46–67). ALJ Laskaris also heard testimony on that date from impartial vocational expert ("VE") Linda M. Gels. (R. 67–75). On October 31, 2018, ALJ Laskaris denied Claimant's claim for DIB. (R. 26–38).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since July 6, 2016, her alleged onset date. (R. 28). At step two, the ALJ found Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 28). Specifically, Claimant has hypertension, obesity, diabetes mellitus with neuropathy and vision complications, chronic kidney disease, obstructive sleep apnea, and peripheral edema. (R. 28). The ALJ also acknowledged any non-severe impairments contained in the record and concluded they had not even a minimal impact on Claimant's ability to perform work on a regular and continuing basis. (R. 28).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 28–29). In particular, the ALJ considered listings 4.01H, 9.00, 11.14, and the effect of Claimant's obesity on the listing criteria. *Id.* The ALJ determined listing 4.01H did not apply because there was no evidence in the record that Claimant's hypertension impacted her body systems to the extent required by the listing criteria. (R. 28–29). Nor did listing 9.00 apply for the same reason. (R. 29). Listing 11.14 also was not met because it requires disorganization of motor function despite prescribed treatment, and the record did not reflect extreme limitation in Claimant's ability to stand up from a seated position, balance, or use her upper extremities. *Id.* Claimant also did not demonstrate a marked limitation in her physical functioning, nor a marked limitation in one of the "paragraph B" criteria of mental functioning. *Id.*

The ALJ then found Claimant had the residual functional capacity ("RFC") to:

"perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally push, pull and operate foot controls with the left lower extremity. She can never climb ladders, ropes or scaffolds, can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. In addition, the claimant must avoid concentrated exposure to frequent vibrations. She can frequently, but not constantly, handle, or grossly manipulate, objects bilaterally, and can frequently finger, that is fine manipulation of items no smaller than a paperclip bilaterally. The claimant is limited to work that can be performed with frequent near acuity. She cannot read small print type instructions, but can use computers or other machinery that permits the user to enlarge text." (R. 29).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a driver. (R. 36). The mental and physical demands of this work exceeded Claimant's residual functional capacity, and so the ALJ concluded that Claimant

would not be able to perform that past relevant work as actually or generally performed. *Id.* The ALJ then concluded at step five that, considering Claimant's age, education, past work experience, and residual functional capacity, she is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 37). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the sedentary exertional level including table worker, assembler, and bonder. *Id.* The ALJ then found Claimant was not under a disability from July 6, 2016 through October 31, 2018, the date of his decision. (R. 37–38).

The Appeals Council agreed to review the matter and issued a decision partially favorable to Claimant on July 30, 2020. (R. 5–17). The Council followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18, *see* 20 C.F.R. §§ 404.1520(a), 416.920(a), and adopted the ALJ's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts for the period beginning July 6, 2016 and ending on October 25, 2018. (R. 12–13). At step one, the Council adopted the ALJ's findings and found that Claimant had not engaged in substantial gainful activity since July 6, 2016, her alleged onset date. (R. 13). At step two, the Council adopted the ALJ's findings and found Claimant had the severe impairments or combination of impairments identified by the ALJ and as defined by 20 C.F.R. 404.1520(c) – hypertension, obesity, diabetes mellitus with neuropathy and vision complications, chronic kidney disease, obstructive sleep apnea, and peripheral edema. *Id.* At step three, the Council determined that Claimant did not have an

impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13). The Council also considered Claimant's subjective symptom statements and adopted the ALJ's conclusions. (R. 15).

Prior to October 26, 2018, the Council found Claimant had substantially the same RFC identified by the ALJ:

> "perform sedentary work as defined in 20 CFR 404.1567(a), except that she could occasionally push, pull, and operate foot controls with the left lower extremity; she could never climb ladders, ropes, or scaffolds; she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to frequent vibrations; she could frequently, but not constantly, handle, or grossly manipulate, objects bilaterally; she could frequently finger, that is fine manipulation of items no smaller than a paperclip, bilaterally; she was limited to work that could be performed with frequent near acuity; and she could not read small print type instructions, but could use computers or other machinery that permits the user to enlarge text." (R. 14).

At step four, the Council noted that Claimant could not perform her past relevant work. (R. 15). At step five, the Council agreed with the ALJ that considering Claimant's age, education, past work experience, and residual functional capacity, she is capable of performing other work within the national economy and that those jobs exist in significant numbers – namely, jobs at the sedentary exertional level including table worker, assembler, and bonder. *Id.* The Council then concluded that Claimant was not disabled from July 6, 2016 through October 25, 2018. *Id.*

On October 26, 2018, the Council determined that the combination of Claimant's glomerular filtration rate ("eGFR") results and her peripheral neuropathy medically equaled the criteria of Listing 6.05, and so she was disabled as of that date. (R. 13–14). In so finding, the Council relied on the opinion of medical expert Dr.

5

Olatunji Akintilo, MD dated February 3, 2020. (R. 14). Dr. Akintilo reviewed the medical evidence and concluded that Claimant has chronic kidney disease, stage 4, and that the combination of her eGFR findings, renal impairment, and diabetes mellitus with neuropathy medically equals the criteria of Listing 6.05 as of October 26, 2018. *Id.* "[B]ecause the Secretary has delegated its authority to make final decisions to the Appeals Council," it is the Appeals Council's decision – incorporating the ALJ's statements about the issues in the case, the evidentiary facts, and certain of the ALJ's conclusions – that constitutes the Secretary's decision for purposes of judicial review under 42 U.S.C. § 405(g).[3] *Bauzo v. Bowen,* 803 F.2d 917, 921 (7th Cir. 1986) (citations omitted). The decision of the Appeals Council is therefore final and reviewable by this Court. *Id.*

### STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

---

[3] As articulated in the procedural history above, the Council adopted the ALJ's evidentiary findings, including his evaluation of the medical opinion evidence and Claimant's subjective symptom testimony, during the relevant period. It conducted its own five-step evaluation process, but explicitly relied on the ALJ's opinion in forming its conclusions. As a result, the decision Claimant challenges here is a hybrid of the Council's legal conclusions and the ALJ's factual analysis – the two opinions are inextricably intertwined. For that reason, and for brevity, the Court will refer to the decisionmaker in this case simply as the "Commissioner."

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

The Appeals Council granted review in this case and, for the period between July 6, 2016 and October 25, 2018, adopted the ALJ's factual statements and certain legal conclusions. (R. 12–16). The Court must therefore review both the Council's decision and the ALJ's underlying opinion during that timeframe. 20 C.F.R. § 404.981; see, e.g., *Arbogast v. Bowen*, 860 F.2d 1400, 1420–03 (7th Cir. 1988) ("We therefore review the decision of the Appeals Council rather than the decision of the ALJ. However, in this case, the Appeals Council explicitly adopted, as modified, the opinion of the ALJ. Accordingly, we must review the decision of the ALJ as modified by the Appeals Council.").

The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Appeals Council is held to the same standard as the ALJ. *Sanford v. Berryhill*, 2018 WL 539804, at *3 (N.D. Ill. 2018) (citing *Bauzo*, 803 F.2d at 923). Judicial review is limited to determining whether the

Commissioner's decision is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards in reaching its decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

However, even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the Commissioner does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the [Commissioner's] judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a

contrary result" will the court reverse the Commissioner's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I. The RFC Assessment

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a).

Claimant argues the RFC is flawed because it does not account for two limitations she described at the hearing: her use of a cane to ambulate, and her need to elevate her legs at waist level and lay down during the day for an hour or two. (R. 59, 62–63, 64, 66). The Council and the ALJ included the following ambulatory restrictions, in addition to the limitation to sedentary work, in the RFC – only occasionally push, pull, and operate foot controls with the left lower extremity, never climb ladders, ropes, or scaffolds, and only occasionally climb ramps and stairs,

balance, stoop, kneel, crouch, and crawl. (R. 14, 29). No accommodations were made for use of a cane or leg elevation. *Id.*

As explained below, the Commissioner's analysis of Claimant's RFC "[said] enough to enable review of whether the [Commissioner] considered the totality of a claimant's limitations," including her subjective reports about using a cane and elevating her legs. *Lothridge v. Saul,* 984 F.3d 1227, 1233 (7th Cir. 2021). So long as the Commissioner supports his RFC decision with substantial evidence and builds a logical bridge between the evidence and his conclusion, as he did here, his ultimate determination will stand. Claimant's argument to the contrary, which does little more than restate her subjective reports of disabling headaches and conclude they are work preclusive, does not persuade the Court that remand is required. Claimant may disagree with the Commissioner's conclusion, but the "RFC is a legal—and not a medical—decision that is exclusively within the ALJ's authority to make[.]" *Michael B. v. Berryhill,* 2019 WL 2269962, at *6 (N.D. Ill. 2019).

### a. Use of a Cane

The Court is unconvinced by Claimant's argument that the Commissioner erred when he did not incorporate Claimant's subjective testimony that she required a cane to ambulate into the RFC. The failure to address a claimant's need to use a cane sometimes requires remand, *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013), but the Commissioner did not ignore Claimant's testimony that she needed to use a cane in this case. Rather, the Commissioner directly confronted Claimant's asserted need for a cane and specifically explained why he did not believe greater ambulatory restrictions were necessary based on the longitudinal record evidence. (R.

35) ("While the claimant indicated that she walked with a cane, she admitted that the cane was not prescribed. Several records indicate that her gait was nonantalgic and she responded well to physical therapy…In addition, the claimant's testimony that she continued to perform household chores with res breaks, cooked on some occasions and shopped for groceries, indicates that she would be able to sustain work with the limitations set forth above."); *Thomas* at 550 ("The error in this case, however, is not that the medical evidence required the ALJ to find that Thomas needed a cane to stand and walk, but that the ALJ failed to consider the issue at all, leaving us without a finding to review."). Claimant's treatment notes in fact showed that she could ambulate consistent with the restrictions provided in the RFC and that she had a normal or non-antalgic gait. (R. 422, 435, 474, 478, 505, 546, 713, 728, 849, 904–06). A single note from Claimant's physical therapist that Claimant was using a cane to ambulate on one date does not compel an accommodation in the RFC, particularly in light of the longitudinal record evidence showing Claimant could ambulate consistent with the restrictions provided in the RFC.

Claimant's own statements about her need to use a cane also were ambiguous. She briefly testified that, although not prescribed, she uses a cane to walk because she will be "off balance" without it. (R. 59). She described having had the cane for "a while" and explained that she puts weight on it and is "scared of falling" without it. (R. 60, 64). However, she noted in her January 4, 2017 function report that she only uses a cane "every once in a while." (R. 196). When Claimant's treating physicians did take note her ability to ambulate, they never, aside from the single note from Claimant's physical therapist discussed above, described her using a cane. (R. 300)

11

(6/9/16: "Patient is AOX3, able to ambulate to the bathroom."); (R. 726) (10/10/17: Patient "[follow up] foot check and left foot callus. She's noticed some knots on her right lower leg. She feels like they have gotten larger. She has been walking more and getting more exercise. She is using the inserts which seem to help. She states the blood sugars are still up and down. She needs her toenails clipped today. Denies any other pedal complaints."); (R. 837) (5/16/18: "Exercise limited by back and feet pain and numbness. Says only walks to doctor's appointments. Has had a few sessions of pool therapy."). An Internal Medicine Consultative Examination dated February 20, 2017 specifically noted, after an in-person examination of Claimant and fulsome review of her medical records, that Claimant "did not need a cane to ambulate" and that her "gait was non-antalgic without the use of assistive devices." (R. 434, 435). Although Claimant expressed interest at the very end of the relevant period in "a prescription for a cane," there were no objective observations documented at that time about Claimant's ability to ambulate. (R. 942) (10/3/18). Only after the relevant period did Claimant's treating physicians note for the first time that Claimant "walks with a cane." (R. 975) (11/8/18); (R. 977) (12/5/18).

Based on this testimony and the record evidence about Claimant's ambulatory limitations, the ALJ, as affirmed by the Council, Commissioner did account, though not to the degree Claimant would like, for Claimant's ambulatory limitations when he restricted her to never climbing ladders, ropes, or scaffolds, and only occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. (R. 14, 29). As the Commissioner emphasized, there is no record evidence from Claimant's treatment providers, save for one note from Claimant's physical therapist

12

documenting her subjective report on a single date that she needs a cane to ambulate, recommending or opining that a cane should be used. *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (explaining that the ALJ "permissibly discounted [claimant's] testimony of incapacitating pain because it conflicted with the objective medical evidence and most of the record"). Because the Commissioner's decision not to incorporate use of a case into the RFC was supported by substantial evidence, and because the Commissioner created a logical bridge between the relevant evidence and his RFC determination to properly support his conclusions about Claimant's ambulatory limitations, the Court finds the Commissioner did not err in this respect.

### b. Leg Elevation

As with Claimant's use of a cane, the Commissioner permissibly discounted Claimant's testimony about the need to elevate her legs as inconsistent with the objective evidence. Claimant testified that she spends a lot of her time during the day in her recliner with her "feet up" and that she "usually" has her feet elevated. (R. 62, 64–65). She described that she lies down during the day for what "could be an hour or maybe two," and that she elevates her feet at "waist level." (R. 66). Claimant's primary care physician noted in his opinion that Claimant "should elevate her feet while seated to reduce swelling." (R. 905). However, there is no correlating documentation in Claimant's treatment notes during the relevant period suggesting Claimant either prefers to elevate her legs or was recommended to do so.

The Commissioner accepted the truth of Claimant's testimony that she elevates her legs at home during the day but explained that such a severe limitation was not borne out by the medical evidence and documented edema. The Court defers

13

to the Commissioner's credibility conclusions unless they are patently wrong, meaning they lack any explanation or support. *Summers v. Berryhill,* 864 F.3d 523, 528 (7th Cir. 2017). And here, the Commissioner specifically accommodated Claimant's edema in her lower extremities, as well as her limited mobility. He admittedly did not assign to them the significance that Claimant would prefer when he did not find the desire to elevate her legs to be work-preclusive. But he built a logical bridge between the record evidence and his conclusions. (R. 34–35) ("Peripheral edema was noted on exam in the lower extremities on multiple occasions and the claimant testified that standing and walking worsened the swelling in her legs. She reported that she spent most of her day sitting in a recliner….The record also documents a history of obesity with a BMI as high as 46. This impairment, combined with clinical exam findings documenting an unsteady gait, edema and complaints of pain support limiting the claimant to sedentary work as she would not be required to stand or walk for more than two hours in an eight hour work day. Further, in light of clinical exam findings document[ing] slightly reduced range of motion in the claimant's feet and ankles, as well as her history of morbid obesity, I have limited the claimant to work that involves no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, courching and crawling, and never climbing ladders, ropes or scaffolds.").

Regarding Claimant's treating physician's opinion, the Commissioner compared Dr. Stewart's brief note that Claimant "should elevate her feet while seated to reduce swelling," (R. 905), with the longitudinal medical evidence, opinions of the state agency consultants, Dr. Stewart's own treatment notes, and Claimant's

activities of daily living before deciding not to incorporate such a restriction into the RFC. (R. 36) ("[Dr. Stewart's] assessment that the claimant needed to elevate her legs is inconsistent with treatment notes, particularly those from July 2018, which indicate that the claimant's gait was normal and she exhibited only mild edema."); (R. 35–36) (giving "some weight" to the state agency consultant's opinions, which did require that Claimant elevate her legs during the day, but adding additional exertional and postural restrictions to accommodate Claimant's diabetic retinopathy and complaints about using her hands). In sum, the Court cannot say the Commissioner was patently wrong in deciding not to fully credit Claimant's testimony about her leg elevation limitation.

## II. Claimant's Obesity and SSR 02-1p

Claimant next asserts that the Commissioner failed to adequately consider her obesity – or more specifically, that the Council and the ALJ did not account for how Claimant's obesity, in combination with her other impairments, affected her ability to work pursuant to SSR 02-1p. SSR 02-1p explains that the "combined effects of obesity with other impairments may be greater than what might be expected without obesity." SSR 02-01p, 2002 WL 34686281, at *6 (Sept. 12, 2002). Notwithstanding that "obesity is no longer a standalone disabling impairment ... the ALJ must still consider its impact when evaluating the severity of other impairments." *Stephens v. Berryhill,* 888 F.3d 323, 328 (7th Cir. 2018).

Here, the Commissioner properly considered Claimant's obesity and its combined effects with other impairments. He specifically referenced SSR 02-1p, the Social Security Administration's guidance on obesity, and followed that guidance in

his substantive analysis. (R. 29). The Commissioner was acutely aware of Claimant's obesity, noting Claimant's BMI multiple times (R. 31–34) and describing her obesity as a severe impairment. (R. 28). The Commissioner did not conclude Claimant's obesity exacerbated her other impairments enough to meet or medically equal a listing, (R. 29), but he nevertheless took great care accounting for limitations arising out of Claimant's obesity, both singularly and in combination with other impairments. For example, he cited Claimant's obesity as one reason that he limited the nature and frequency of certain postural activities, her need to stand or walk during the day, restricted left foot movement, and fingering limitations:

> "The combination of the claimant's diabetes, chronic kidney disease, hypertension, obstructive sleep apnea, obesity and peripheral edema warrant additional limitations…The record also documents a history of obesity with a BMI as high as 46. This impairment, combined with clinical exam findings documenting an unsteady gait, edema and complaints of pain support limiting the claimant to sedentary work as she would not be required to stand or walk for more than two hours in an eight hour work day. Further, in light of clinical exam findings document[ing] slightly reduced range of motion in the claimant's feet and ankles, as well as her history of morbid obesity, I have limited the claimant to work that involves no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling, and never climbing ladders, ropes or scaffolds. Performing these postural activities on a more frequent basis could reasonably be expected to exacerbate the claimant's pain or prove particularly difficult in light of her limited mobility." (R. 34–35).

The Commissioner's conclusion that obesity was a severe impairment, analysis of the effect of that impairment on Claimant's RFC, and incorporation of several obesity-related limitations into the RFC is enough to say that substantial evidence supports that the Commissioner adequately considered Plaintiff's obesity. *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015). That the Commissioner predicated his decision, at least in part, on the opinions of the state agency doctors and

Claimant's treating physician – both of whom considered Claimant's obesity and recommended certain physical and postural activities in the RFC – also persuades the Court that the Commissioner did enough to account for Claimant's obesity in this case. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013).

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 19] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 23] is granted.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:    March 20, 2023

17